CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
March 30, 2026

LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| Crystal Allman | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Gary Allman, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:25-cv-00010 |
| | ) | |
| Shenandoah Valley Social Services, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Crystal Allman and Gary Allman ("the Allmans"), proceeding *pro se* and *in forma pauperis*, challenge state court proceedings that resulted in the removal of their children. This matter is before the court on Defendants Linda Jones, Augusta County Judicial System, and Virginia Department of Social Services' motion to dismiss the Allmans' amended complaint, (Dkt. 23); Defendant Shenandoah Valley Social Services' motion to dismiss the Allmans' amended complaint, (Dkt. 28); the Allmans' motion for leave to file a second amended complaint, (Dkt. 13); and the Allmans' motion to disqualify counsel, (Dkt. 14).

For the reasons that follow, the court will grant Defendants' motions to dismiss the Allmans' amended complaint; deny the Allmans leave to file a second amended complaint; and deny the Allmans' motion to disqualify counsel.

## I.    Background

### A.  Factual History

The following facts are taken from the Allmans' amended complaint, (Am. Compl. (Dkt. 10)), and are assumed true for purposes of the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Gary and Crystal Allman are residents of Augusta County, Virginia. (*Id.* ¶ 8.) They are the parents and legal custodians of minor children. (*Id.* ¶ 14.) Beginning in April 2023, Child Protective Services investigated the Allmans after receiving anonymous reports of drug abuse and child neglect. (*Id.* ¶ 17.) CPS launched a second investigation in June 2023 after receiving additional reports of drug abuse, child abuse, and theft of the children's medication. (*Id.* ¶ 18.) During the second investigation, CPS employee Kevin Feaganes told the Allmans that "if [they] would ever have a slip up and used as long as [they] are honest[,] one slip up would not be a reason for [CPS] to take the kids." (*Id.* ¶ 19.)

In July 2024, another CPS employee, Taylor Loyd, investigated the Allmans after receiving anonymous allegations that the Allmans were "strung out on meth," had been evicted, and were abusing the children. (*Id.* ¶ 20.) The Allmans responded by "assert[ing] [their] rights under the Americans with Disabilities Act and the Rehabilitation Act." (*Id.* ¶ 21.) In August 2024, after the Allmans produced negative drug test results and other evidence of the children's well-being, the investigation ended. (*Id.* ¶ 23.)

On August 30, 2024, the Allmans "had a domestic disagreement." (*Id.* ¶ 24.) Gary told police that Crystal had bruised the children. (*Id.*) When Loyd, the CPS employee, arrived to investigate, Gary told Loyd that he lied to the police about the cause of the bruises. (*Id.* ¶ 25.)

After speaking with members of the household, including the children, Loyd indicated she would not pursue an investigation. (*Id.*) But soon after, Loyd requested drug tests from the Allmans and threatened to call the police if they refused. (*Id.* ¶ 26.)

"Relying on prior representations that 'one slip up would not cause [them] to l[ose] the kids,'" Gary revealed that he had used drugs three days prior. (*Id.* ¶ 27.) In response, Loyd and her supervisor, McKayla Smith, placed the Allmans on a "safety plan," requiring the children to sleep at Gary's parents' home. (Am. Compl. ¶ 28.) The Allmans were required to leave Gary's parents' home at night but could return at 7 a.m. to help prepare the children for school. (*Id.*) Crystal "broke down" and expressed incredulity at the safety plan. (*Id.*)

On September 9, 2024, the Allmans had a meeting with Loyd and Smith. (*Id.* ¶¶ 30–32.) Loyd and Smith confirmed that the safety plan would be in place until hair follicle test results came back. (*Id.* ¶ 32.) Crystal "refused to sign the safety plan," "blew up," and "left the meeting screaming and crying." (*Id.* ¶ 33.) Gary told Loyd and Smith that Crystal has "disabilities" that "affect her ability to process information under pressure and manage emotional responses in stressful situations." (*Id.* ¶¶ 15, 34.)

On September 11, 2024, Gary Allman arrived at his mother's house at 6:30 a.m. to prepare the children for school. (*Id.* ¶ 37.) Soon after, Loyd arrived at the house. (*Id.* ¶ 40.) Loyd said that a "reliable source" had told her that Gary and Crystal had stayed overnight at the house in violation of the safety plan. (*Id.* ¶ 40.) Loyd informed them that they could "no longer be around the children." (*Id.*) Loyd "wouldn't listen" to Gary's explanation that he had come in that morning. (*Id.* ¶ 41.) Crystal cursed at Loyd and flew into a fit of screaming and crying. (*Id.* ¶ 43.)

On September 14, 2024, CPS Supervisor Nenita Cromer removed the children from their grandparents' home.  (*Id.* ¶¶ 47, 49.)  No warrant or court order had previously authorized the children's removal.  (*Id.* ¶ 48.)  Cromer explained to the Allmans that she had learned from a "reliable source" that the Allmans had been around the children.  (*Id.* ¶ 50.)  Cromer stated that the Allmans could plead their case at their "72-hour hearing" on September 17, 2024.  (*Id.* ¶ 51.)

On September 17, 2024, the Allmans arrived at the courthouse, only to be told around noon that there was no hearing scheduled for that day.  (*Id.* ¶ 52.)  A 72-hour hearing was purportedly held without the Allmans present.  (*Id.* ¶ 53.)  A court hearing was subsequently held on September 24, 2024, before Judge Linda Jones of the Augusta Juvenile and Domestic Relations ("JDR") District Court.  (*Id.* ¶¶ 13, 56.)  The Allmans took issue with several aspects of the proceeding.  First, Crystal sought to terminate her appointed guardian ad litem, Paul Titus, which Judge Jones did not allow.  (*Id.*)  Second, Judge Jones ordered that Gary be removed from the courtroom.  (*Id.*)  Finally, Judge Jones "took no action" to stop attorney James Glick, who represented "CPS," from "star[ing] at and smirk[ing] at Crystal," whispering to nearby agents, and "laugh[ing] when Crystal became emotionally overwhelmed."  (*Id.*)

At the hearing, Glick allegedly presented "misleading information" about the Allmans' drug test results; falsely stated the number of times the children had been involved in CPS proceedings; and "used Mr. Allman's back ground [sic] against Crystal Allman while Mr[.] Allman wasn't present to defend himself."  (*Id.* ¶¶ 57, 59–60.)  Glick and Cromer also made "false statements" claiming that the children had certain injuries.  (*Id.* ¶ 58.)  Judge Jones denied various motions filed by the Allmans, including a motion for her recusal and a motion for

recognition of a conflict of interest. (*Id.* ¶¶ 63–69.) Thereafter, the Allmans served "intent-to-sue" letters on Defendants and various other individuals associated with the custody proceedings. (*Id.* ¶ 71.)

In November and December of 2024, the Allmans filed additional motions and a writ of mandamus, "seeking a new trial . . . and the return of their children pending the new trial." (*Id.* ¶¶ 72–73.) In the "judge[']s office," the Allmans were told they had received a new trial and that the writ of mandamus had been granted. (*Id.* ¶ 74.) However, soon after, "every judge in the Augusta County Circuit Court recused themselves from all cases involving" the Allmans. (*Id.* ¶ 75.) The Allmans later learned that the "Circuit Court judge had misled them and that the Writ of Mandamus had not been approved." (*Id.* ¶ 76.) The Allmans had subsequent proceedings in the JDR court on February 25, 2025. (*Id.* ¶ 77.) There, Judge Jones again allegedly disparaged Crystal. (*Id.* ¶ 78.)

The children were subsequently placed in foster care. (*See id.* ¶ 80.) There, the Allmans witnessed and reported issues regarding the children's cleanliness and conditions. (*Id.*) "When Plaintiffs raised concerns, visits with their children were threatened." (*Id.*) Grace Burdett, a "[f]oster care worker," "ignored all letters of concern and failed to respond to [the Allmans'] communications." (*Id.* ¶ 82.)

## B. Procedural History

Crystal Allman and Gary Allman, proceeding *pro se*, commenced this action on February 21, 2025. (Dkt. 1.) Their original complaint alleged violations of due process, the Americans with Disabilities Act ("ADA"), and Section 504 of the Rehabilitation Act, but provided few factual allegations to support their claims. (*See id.*)

- 5 -

On April 8, 2025, the court granted the Allmans' application for leave to proceed *in forma pauperis* but dismissed their original complaint without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief. (Dkt. 9.) The court granted the Allmans leave to amend their complaint and directed them to file an amended complaint within 21 days of the order if they wished to maintain their case. (*Id.*)

The Allmans filed an amended complaint on May 7, 2025, several days past the court's 21-day deadline. (Dkt. 10.) Because the Allmans did not comply with the court's deadline, request an extension, or explain their late filing in any way, the court did not immediately accept their May 7, 2025, filing as the operative complaint. Instead, the court construed it as a motion for leave to amend, which the court granted on July 8, 2025. (Dkt. 12.)

The amended complaint brings claims against Linda Jones (in her official and individual capacities), Augusta County Judicial System, and the Commonwealth of Virginia Department of Social Services (collectively "State Defendants"), as well as Shenandoah Valley Social Services ("SVDSS").[1] (*Id.* ¶¶ 11–13.) The amended complaint alleges a total of ten causes of action under the United States Constitution, federal statutes, and Virginia common law. (*See id.* ¶¶ 83–139.) It requests $1,000,000 in compensatory damages, punitive damages, a declaratory judgment that Defendants violated federal law, and injunctive relief either ordering the immediate return of the children or ordering a new hearing in state court. (*Id.* at 18.)

---

[1] The Allmans' amended complaint includes allegations against people named as "defendants" in the body of the complaint, but who are not listed as defendants in the caption as required by Federal Rule of Civil Procedure 10(a). (*See* Am. Compl. at 11 (listing an allegation against "Defendants Cromer, Loyd, Smith, and Deputies," despite the fact that only the State Defendants and SVDSS were listed in the caption and served).) Allegations against these defendants who do not appear in the caption of the complaint "cannot proceed and are dismissed." *Monroe-Williams v. Clawson*, No. 5:22-cv-00027-MR, 2022 WL 812392, at *2 (W.D.N.C. Mar. 16, 2022).

Both the State Defendants and SVDSS move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (Dkts. 23, 28.)

## II.    Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).  It does not "resolve contests surrounding the facts or the merits of a claim."  *Doriety for Est. of Crenshaw v. Sletten*, 109 F.4th 670, 679 (4th Cir. 2024) (internal quotation marks omitted) (quoting *Megaro v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  When reviewing a Rule 12(b)(6) motion to dismiss, the court must "accept as true all well-pleaded facts in a complaint and construe them in the light most favorable to the plaintiff."  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

A motion under Rule 12(b)(1) tests the court's subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A defendant can lodge either a facial or a factual challenge to subject matter jurisdiction.  *See Hutton v. Nat'l Bd. of Exam'rs in Optometry, Inc.*, 892 F.3d 613, 620–21, 621 n.7 (4th Cir. 2018); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  A facial challenge asserts that a complaint fails to allege facts upon which to base subject matter jurisdiction, *see Hutton*, 892 F.3d at 621 n.7, in which case the court takes the factual allegations of the complaint as true, *see Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017).  But a factual challenge argues

"that the jurisdictional allegations made in the complaint are not true." *Brunelle v. Norfolk S. Ry. Co.*, No. 2:18-cv-00290, 2018 WL 4690904, at *2 (E.D. Va. Sept. 28, 2018). In such a challenge, a district court may "regard the pleadings as mere evidence" and "consider evidence outside the pleadings." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009).

The court must liberally construe pleadings filed by a *pro se* party. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The liberal construction rule "allows courts to recognize claims despite various formal deficiencies, such as incorrect labels or lack of cited legal authority." *Wall v. Rasnick*, 42 F.4th 214, 218 (4th Cir. 2022). When evaluating *pro se* litigants' claims, "courts routinely look beyond what [the] litigants identify as their 'complaint' and analyze the substance of any included documents." *Pendleton v. Jividen*, 96 F.4th 652, 656 (4th Cir. 2024). At the same time, though, liberal construction "does not transform the court into an advocate" for *pro se* parties. *Weller v. Dep't of Soc. Servs. for City of Balt.*, 901 F.2d 387, 391 (4th Cir. 1990). *Pro se* parties, like all litigants, must comply with the pleading requirements in the Federal Rules of Civil Procedure. *See Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

### III.    Analysis

### A.  The court lacks jurisdiction over the Allmans' claims.

The court will grant the State Defendants' and SVDSS's motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The Allmans request three different remedies: damages, a declaratory judgment, and an injunction. (Am. Compl. at 18.) For the

following reasons, the court lacks subject matter jurisdiction to grant any of this relief. The

court must therefore dismiss the Allmans' amended complaint.[2]

    1. <u>The court lacks jurisdiction over the Allmans' claims for damages.</u>

        *i.*      *The Allmans' § 1983 claims for damages against the State Defendants and SVDSS are mostly barred by sovereign immunity.*

The Eleventh Amendment bars suits against a nonconsenting state by its own citizens

in federal court. *See Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). Virginia has

not waived its sovereign immunity to actions under § 1983. *See, e.g.*, *Saphilom v. Fairfax Cnty.

Police*, No. 3:23-cv-00562, 2024 WL 4863296, at *4 (E.D. Va. Nov. 21, 2024). While Congress

may abrogate a state's Eleventh Amendment immunity, the Supreme Court has held that

§ 1983 did not have that effect.[3] *Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985). A suit

seeking damages against state officials in their official capacity is also barred by sovereign

immunity, as such a suit would be "against the official's office, and as such . . . no different

from a suit against the State itself." *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) (cleaned up)

(quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

All Defendants—with the exception of Judge Jones in her individual capacity—enjoy

sovereign immunity from the Allmans' suit for damages. "[S]overeign immunity bars suit not

only against a state, but also against an instrumentality of a state, such as a state agency,

sometimes referred to as an 'arm of the state.'" *Doe v. Cmty. Coll. of Balt. Cnty.*, 595 F. Supp.

3d 392, 410 (D. Md. 2022) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–

---

[2] Because this court lacks jurisdiction over the Allmans' claims, the court does not reach the arguments presented in the State Defendants' and SVSS's 12(b)(6) motions to dismiss for failure to state claim.

[3] In addition, the Supreme Court has recognized that a state is not a "person" who may be sued within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63–64 (1989).

02 (1984)). All organizational defendants—a county court system, Virginia's department of social services, and a local department of social services—are "arms of the state" entitled to sovereign immunity. *Bingham v. Virginia,* No. 1:25-cv-00066, 2025 WL 1210546, at *3 (E.D. Va. Apr. 25, 2025) (state courts); *Parks v. Virginia Dep't of Soc. Servs. Child Support Enf't Servs.*, No. 1:16-cv-00568, 2016 WL 4384343, at *3 (E.D. Va. Aug. 17, 2016), *aff'd* 672 F. App'x 281 (4th Cir. 2016) (the Virginia Department of Social Services); *Kissinger-Stankevitz v. Town of Tappahannock*, 750 F. Supp. 3d 590, 622 (E.D. Va. 2024), *aff'd*, No. 24-2270, 2025 WL 3046480 (4th Cir. Oct. 31, 2025) (local departments of social services). Therefore, sovereign immunity shields the State Defendants, including Judge Jones in her official capacity, and SVDSS from all § 1983 claims for damages brought by the Allmans.

> ii.     *The Allmans' claims against Judge Jones in her individual capacity are barred by judicial immunity.*

Only the Allmans' suit against Judge Jones in her *individual* capacity survives the Eleventh Amendment's jurisdictional bar against claims for damages. But because the Allmans' allegations against Judge Jones "aris[e] out of the performance of [her] judicial functions," Judge Jones enjoys absolute judicial immunity from suit. *Weigel v. Maryland*, 950 F. Supp. 2d 811, 832 (D. Md. 2013). "Judicial immunity shields judges from claims for damages in both their official and individual capacities." *Ash v. Russell*, No. 1:23-cv-02873, 2024 WL 3597184, at *5 (D. Md. July 31, 2024) (collecting cases). "Judicial immunity is absolute; when it applies, it does not merely protect judges from damages but protects them from such suits entirely." *Ash*, 2024 WL 3597184, at *5 (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991); *Gibson v. Goldston*, 85 F.4th 218, 223 (4th Cir. 2023)).

The Allmans attempt to circumvent judicial immunity, but each attempt fails. The Allmans claim that Judge Jones acted in an administrative—not judicial—capacity and thus has been stripped of judicial immunity. (Pls.' Resp. at 9 (Dkt. 26).) Not so. The Allmans claim that Judge Jones made various evidentiary and courtroom management decisions that violated their federal rights. (Am. Compl. ¶¶ 56–69, 77–79.) These are clearly "judicial acts" which grant Judge Jones absolute judicial immunity. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Next, the Allmans argue that Judge Jones' proceedings occurred "while the case was under active review" by the Supreme Court of Virginia, such that Judge Jones acted "in the absence of jurisdiction" and without judicial immunity. (Pls.' Resp. at 10.) It is true that judges are stripped of judicial immunity when they act in the "clear absence of all jurisdiction." *Sparkman*, 435 U.S. at 357. But a judge acts in the clear absence of all jurisdiction only "if the matter upon which he acts is clearly outside the *subject matter* jurisdiction of the court over which he presides." *Murphy v. Goff*, No. 6:10-cv-00026, 2010 WL 2292130, at *3 (W.D. Va. June 7, 2010) (quoting *King v. Love*, 766 F.2d 962, 965 (6th Cir. 1985)) (emphasis added). In other words, even assuming that Judge Jones temporarily lacked jurisdiction while the case was appealed, such a "lack of 'jurisdiction' [due to appellate proceedings] d[oes] not deprive [a trial court] of its *subject matter jurisdiction.*" *Russell v. Russell*, No. 2559-11-1, 2012 WL 2888894, at *2 (Va. Ct. App. July 17, 2012). And Judge Jones—a judge of the Juvenile and Domestic Relations court—clearly did not lack subject matter jurisdiction over the Allmans' child custody proceedings. For these reasons, Judge Jones enjoys absolute immunity from the Allmans' suit.

2.   The court lacks jurisdiction to issue a declaratory judgment.

The Allmans seek a declaratory judgment from this court stating that "that Defendants' actions violated Plaintiffs' rights under the United States Constitution, the Americans with Disabilities Act, and the Rehabilitation Act." (Am. Compl. at 18.)   But the court lacks jurisdiction over the Allmans' claims for declaratory relief for several reasons.  First, sovereign immunity prevents this court from entertaining a declaratory action against Judge Jones in her official capacity, Augusta County Judicial System, and the Commonwealth of Virginia Department of Social Services.  *Goldstein v. Moatz*, 364 F.3d 205, 219 (4th Cir. 2004) ("If a declaratory judgment proceeding actually constitutes a suit against the sovereign, it is barred absent a waiver of sovereign immunity.").

Moreover, this court lacks jurisdiction to entertain a declaratory action against Judge Jones in her individual capacity.   The Allmans essentially request "a declaration that Defendants' past orders and rulings were erroneous." *Charnock v. Virginia*, No. 2:16-cv-00493, 2017 WL 5574987, at *4 (E.D. Va. Jan. 5, 2017), *aff'd* 698 F. App'x 158 (4th Cir. 2017).  But "[s]uch a request for retrospective relief is barred by judicial immunity." *Id.* (collecting cases).

3.  The court lacks jurisdiction to issue the Allmans' requested injunctive relief.

Finally, the Allmans seek an injunction "ordering the immediate return" of their children "to their custody" or "alternatively . . . a new hearing with appropriate procedural protections and reasonable accommodations." (Am. Compl. at 18.)  The *Rooker-Feldman* doctrine deprives this court of jurisdiction to grant such an injunction.

The *Rooker-Feldman* doctrine prohibits federal district courts from hearing claims "complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It "extends not only to issues actually decided by a state court but also to those that are inextricably intertwined with questions ruled upon by a state court." *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 857–58 (4th Cir. 2001) (internal quotation marks omitted). A plaintiff "may not escape the jurisdictional bar of *Rooker-Feldman* by merely refashioning [their] attack on the state court judgment[] as a § 1983 claim." *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 202 (4th Cir. 1997). That includes § 1983 claims alleging federal constitutional violations. *See, e.g., id.* at 202–03.

Here, the injunction sought by the Allmans is squarely prohibited by the *Rooker-Feldman* doctrine. The Allmans ask this court to reverse a state court's ultimate disposition, as well as second-guess various evidentiary and courtroom-management rulings. This court is prohibited from doing so. *Shooting Point, L.L.C. v. Cumming*, 368 F.3d 379, 383 (4th Cir. 2004) (plaintiffs are "barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on [their] claim that the state judgment itself violates [their] federal rights" (quoting *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000))).

Because the court lacks jurisdiction against any named Defendant, the court must dismiss the Allmans' amended complaint.

## B. Motion for Leave to Amend

On July 16, 2025, the Allmans filed a so-called "Amended Complaint." (Dkt. 13.) A party seeking to amend must obtain the leave of court, except in certain circumstances that do

not apply here. Fed. R. Civ. P. 15(a)(2). The Allmans did not request leave to amend. Given their *pro se* status, however, the court finds it appropriate to construe this "Amended Complaint" as a motion for leave to file a second amended complaint.

Under Federal Rule of Civil Procedure 15(a), a court should freely grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). It should deny leave to amend "*only when* the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Edwards*, 178 F.3d at 242 (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). A proposed amendment may be denied as futile when it "fails to satisfy the requirements of the federal rules." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (citation omitted). This means that district courts "are free to deny leave to amend as futile if the complaint fails to withstand Rule 12(b)(6) scrutiny." *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, 750 (4th Cir. 2021).

The Allmans proposed several amendments. First, they would add several new defendants: CPS Supervisor Nenita Cromer; James Glick; Taylor Loyd; and CPS "Foster Care worker" Grace Burdett.[4] (Proposed Second Am. Compl. ¶¶ 15–19.) The proposed second amended complaint removes all requests for injunctive relief, except for a "restraining order" against "Shenandoah Valley Social Services – CPS – Foster Care."[5] (*Id.* at 18.) The proposed

---

[4] The proposed second amended complaint also seeks to add as a defendant "CPS," "a local government entity responsible for providing social services in Augusta County, Virginia." (Proposed Second Amended Compl. ¶ 13.) The court will disregard this defendant, as the Allmans do not provide the court with enough information to ascertain what this entity is. Moreover, to the extent "CPS" refers to Augusta County's department of social services, any claim for damages would be barred by sovereign immunity for the reasons explained above.

[5] Even if the court were to construe this request for a "restraining order" as a motion for a temporary restraining order under Federal Rule of Civil Procedure 65, the court would deny it for reasons discussed in its previous memorandum opinion, (Dkt. 8 at 7–8), including the Allmans' failure to "include any analysis of the four preliminary injunction factors," (*id.* at 8.)

second amended complaint also adds additional allegations about "systemic bias" they faced within the Augusta County Judicial System, (*id.* ¶ 85), as well as additional allegations about their children's conditions in foster care, (*id.* ¶¶ 76–80).

>    1. <u>All proposed claims against SVDSS, the State Defendants, and Judge Jones in her official and individual capacities are futile for the reasons discussed above.</u>

As previously discussed, this court lacks jurisdiction to hear the Allmans' claim for damages and injunctive relief against SVDSS, the State Defendants, and Judge Jones. No facts alleged in the proposed second amended complaint change the court's analysis. The Allmans' second amended complaint is futile as to these defendants. The court therefore proceeds by examining whether the Allmans' proposed amendments would be futile as to the additional named defendants: Cromer, Glick, Loyd, and Burdett. § 1983 would provide a damages remedy against these defendants in their individual capacities if they are state actors and deprived the Allmans of a right secured by federal laws—unless they are protected by qualified immunity. *McDuffie v. Housey*, Civ. No. 9:20-3131-MBS, 2022 WL 4078110, at *2 (D.S.C. Sept. 6, 2022); *Franklin v. City of Charlotte*, 64 F.4th 519, 530 (4th Cir. 2023).

>    2. <u>The Allmans' proposed Fourth Amendment claim is futile.</u>

The Allmans' proposed second amended complaint alleges a Fourth Amendment claim against Cromer, Loyd, Smith and unnamed "Deputies." (Proposed Second Am. Compl. at 10–11.) Specifically, the Allmans allege that Cromer and two Augusta County deputies "removed Plaintiffs' children from their grandparents' home without a valid warrant or court order and in the absence of exigent circumstances." (*Id.*)

This claim is futile, as the Allmans lack standing to assert Fourth Amendment claims for their children. The rights secured by the Fourth Amendment are "personal rights," which

"may be enforced . . . only at the instance of one whose own protection was infringed by the search and seizure." *Feller v. Feller*, Civ. No. TDC-18-0108, 2020 WL 1322946, at *4 (D. Md. Mar. 20, 2020) (quoting *Rakas v. Illinois*, 439 U.S. 128, 138 (1978)). "Children are not property. Thus, the right to be free from an unreasonable seizure of their persons belongs to the children themselves, not their parents." *Id.* Because the Allmans' proposed second amended complaint was filed on their own behalf—and not on behalf of their children—this claim would be futile.

3.  The Allmans' proposed substantive due process claim is futile.

The Allmans propose a claim against Cromer, Glick, Loyd, and Burdett for violations of their substantive process rights. "[T]he touchstone of [substantive] due process is protection of the individual against arbitrary action of government." *Mora v. City of Gaithersburg*, 519 F.3d 216, 230 (4th Cir. 2008) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998)). "[S]ubstantive due process violations 'run only to state action so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.'" *Id.* (quoting *Rucker v. Harford Cnty.*, 946 F.2d 278, 281 (4th Cir. 1991)).

Here, most of the Allmans' substantive due process allegations involve actions and allegedly false statements—presumably made by Glick and Cromer—during their child custody proceedings. (*See, e.g.*, Proposed Second Am. Compl. ¶ 104 ("Defendants engaged in conscience-shocking conduct by . . . [f]alsely representing that hair follicle tests could determine frequency, duration, and quantity of drug use")). But "post-deprivation state remedies"—namely, the state appellate process—could have rectified any alleged errors in the

state proceedings. *Mora*, 519 F.3d at 230. Moreover, this alleged conduct, especially as alleged against Cromer and Loyd, is not so "egregious," so "abusive or oppressive," and so lacking in "justification by any government interest" as to shock the conscience. *Parker v. Henry & William Evans Home for Child., Inc.*, 762 F. App'x 147, 156 (4th Cir. 2019); *see also Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("It does not shock the conscience to hear that defendants removed a child in emergency action from the custody of a parent suspected of abusing him, based upon some evidence of child abuse.").

Additionally, Cromer, Loyd, and Glick would enjoy absolute immunity against any allegation that they fabricated evidence or lied during the Allmans' proceedings. "The Fourth Circuit has held that state social services workers are entitled to absolute immunity for 'activities . . . that could be deemed prosecutorial' in nature." *Rhoads v. Guilford Cnty.*, 751 F. Supp. 3d 590, 603 (M.D.N.C. 2024), *aff'd*, No. 24-2035, 2026 WL 124238 (4th Cir. Jan. 16, 2026) (quoting *Vosburg v. Dep't of Soc. Servs.*, 884 F.2d 133, 138 (4th Cir. 1989)); *see also Shirley v. Drake*, No. 98-1750, 1999 WL 202671, at *2 (4th Cir. Apr. 12, 1999) (unpublished table decision) (noting that attorneys representing the state enjoy absolute immunity for advocacy made during child custody proceedings). "Prosecutorial activities" include preparing and filing removal petitions and testifying in court to prosecute them. *See Sahoo v. Gleaton*, No. 5:16-cv-00153-F, 2017 WL 1102623, at *9 (E.D.N.C. Mar. 23, 2017). Cromer, Loyd, and Glick's alleged in-court actions fall squarely within this definition of prosecutorial conduct. And although the Allmans allege that defendants misrepresented evidence during the hearing, absolute immunity attaches even when defendants "intentionally misrepresented or omitted facts . . . during [their] testimony." *Id.* (citing *Booker v. S.C. Dep't of Soc. Servs.*, 583 F. App'x

- 17 -

147, 148 (4th Cir. 2014)).  Cromer, Loyd, and Glick thus enjoy absolute immunity against any allegations regarding their in-court testimony or advocacy.

Finally, the Allmans make one allegation of conscience-shocking behavior not stemming from the child custody proceedings: that Defendants "[a]llow[ed] [their] children to remain in foster care where they were subjected to inappropriate conduct and potential abuse." (Proposed Second Am. Compl. ¶ 104.)  For starters, the Allmans' proposed claim here only alleges conclusory allegations and "potential" abuse.  (*Id.*)  But even if the Allmans had adequately alleged abuse, a state actor's "failure to protect an individual against private violence did not violate substantive due process rights, because a state has no duty to provide its citizens with adequate protection from private violence."  *Pfoltzer v. Cnty. of Fairfax*, 775 F. Supp. 874, 884–85 (E.D. Va. 1991) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)), *aff'd sub nom. Pfoltzer v. Fairfax Cnty. Dep't of Hum. Dev.*, 966 F.2d 1443 (4th Cir. 1992) (unpublished table decision).  And foster parents are not state actors for purposes of § 1983 claims.  *Id.* (citing *Milburn v. Anne Arundel Cnty. Dep't of Soc. Serv.*, 871 F.2d 474 (4th Cir. 1989)).  The Allmans simply have no claim for a substantive due process violation for the treatment of their children by private foster parents.

   4. <u>The Allmans' proposed procedural due process and denial of access to court claims are futile.</u>

The Allmans propose allegations that "all Defendants" denied them procedural due process and access to courts under § 1983.  (Proposed Second Am. Compl. ¶¶ 96–101, 126–129.)  These allegations can only be reasonably construed, however, as being made against Glick and Judge Jones, as both claims rest on various alleged actions taken by Judge Jones and Glick during the Allmans' child custody hearings.  (*See, e.g., id.* ¶ 128 (alleging that Judge Jones

"[r]efus[ed] to accept or consider evidence presented by Plaintiffs"); *id.* (alleging that a defendant, seemingly Glick, "[c]reat[ed] an environment designed to trigger Crystal's disability-related responses").)

These claims are futile against Judge Jones, for reasons of judicial immunity already discussed. They are also futile to Glick. As discussed above, Glick enjoys prosecutorial immunity for any advocacy made during the Allmans' proceedings. *Vosburg*, 884 F.2d at 138; *Shirley*, 1999 WL 202671, at *2. Moreover, to state a claim under § 1983 for denial of access to courts, a defendant must be a state actor. *See Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621, 628 (E.D. Va.), *aff'd*, 774 F. App'x 162 (4th Cir. 2019) (citing *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999). But Glick—as indicated by the Allmans' pleadings—is seemingly a private attorney, not a state employee. (*See* Dkt. 5 at 2; Dkt. 14.) "[P]rivate law firms and lawyers, even where they represent a public entity, are not 'state actors' amenable to suit under § 1983." *Davis v. Smith & Robinson L. Firm*, No. Civ. 0:24-cv-00315, 2024 WL 5688621, at *3 (D.S.C. Feb. 29, 2024), *report and recommendation adopted*, No. 0:24-cv-00315, 2025 WL 1348605 (D.S.C. May 8, 2025). Leave to amend this claim would be futile.

5. <u>The Allmans' proposed ADA and Rehabilitation Act claims are futile.</u>

The Allmans propose two claims for damages under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. (Proposed Second Am. Compl. ¶¶ 107–119.) The Allmans' allegations relate to various actions taken during their child custody hearings, including that Defendants "[c]reat[ed] emotionally charged environments designed to trigger Crystal's disability-related responses." (*Id.* ¶¶ 111, 118.)

Again, while the Allmans make these claims against "[a]ll Defendants," (*id.* at 13), these allegations can only be reasonably construed as against Glick and Judge Jones, as they involve actions taken during the Allmans' custody hearings by these two defendants.  Again, these claims for damages are futile against Judge Jones because of judicial immunity.  And they are futile to Glick, a private attorney, as "[t]he ADA and the Rehabilitation Act . . . do not provide any cause of action for a plaintiff to sue an individual defendant . . . in his individual capacity." *Williams v. Smith*, No. 1:10-cv-00501, 2010 WL 2816714, at *2 (M.D.N.C. July 15, 2010), *report and recommendation adopted*, No. 1:10-cv-00501, 2011 WL 1212812 (M.D.N.C. Mar. 28, 2011). The court will deny leave to amend these claims.

6.  <u>The Allmans' proposed fraud claim is futile.</u>

The Allmans propose a claim for "fraud and conspiracy to commit fraud" against Defendants Feaganes, Loyd, Cromer, Smith, and Glick.  (Proposed Second Am. Compl. ¶¶ 130–36.)  Specifically, the Allmans say Feaganes and Loyd's "representations that 'one slip up would not cause [them] to loose [sic] the kids"—as well as various allegedly false statements made by Glick and Cromer during the child custody proceedings—constitute fraud.  (*Id.* ¶ 131.)  To allege a claim of fraud in Virginia, a plaintiff must allege "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Cohn v. Knowledge Connections, Inc.*, 585 S.E.2d 578, 581 (Va. 2003) (citation omitted).

But the proposed claim offers no allegation that Glick and Cromer induced the Allmans to take any action.  Nor does the Allmans' independent choice to use drugs constitute "reasonable or justifiable reliance" on Feaganes and Loyd's statements.  *Sweely Holdings, LLC*

*v. SunTrust Bank*, 820 S.E.2d 596, 605 (Va. 2018) (cleaned up).  Finally, for their conclusory conspiracy claim, the Allmans have not alleged agreement in any form, which is "[a]n essential element of a claim of conspiracy."  *Hall v. Townsend*, Civ. No. CCB-20-2159, 2020 WL 4933630, at *2 (D. Md. Aug. 24, 2020).  The court will deny leave to amend this claim as futile.

       7.   <u>The Allmans' proposed First Amendment retaliation claim is futile.</u>

The Allmans also propose a claim for First Amendment retaliation against "[a]ll Defendants."  (Proposed Second Am. Compl. ¶ 120–125.)  To state such a claim, the Allmans must allege that they (1) engaged in protected First Amendment activity, (2) the Defendants took some action that adversely affected their First Amendment rights, and (3) there was a causal relationship between their protected activity and Defendants' conduct.  *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020).  "A plaintiff bringing a garden variety retaliation claim under the First Amendment must prove that the responsible official or officials were motivated by a desire to retaliate against him because of his speech" and possessed "retaliatory animus."  *See Shapiro v. McManus*, 203 F. Supp. 3d 579, 596 (D. Md. 2016); *see also Swagler v. Sheridan*, 837 F. Supp. 2d 509, 529 (D. Md. 2011) ("[P]laintiffs asserting a First Amendment retaliation claim must generally establish 'improper motive' on the part of the government actors who restricted their speech.").

While the Allmans describe this claim as against "[a]ll Defendants," the claim could only reasonably be construed as against Glick, Cromer, and Burdett, given the court lacks jurisdiction over SVDSS and the State Defendants and this claim does not pertain to any allegations against Loyd.  (Proposed Second Am. Compl. ¶ 120–125 (alleging retaliation that allegedly occurred in the courtroom and when complaining about foster care conditions).)

The Allmans' proposed First Amendment retaliation claim against Glick would be futile, as Glick is not a state actor.  And the allegation would be futile against Cromer, as the "retaliation" that Cromer is alleged to have taken—removing the children from the Allmans' home—occurred before any of the Allmans' alleged protected activities.[6]  (Proposed Second Am. Compl. ¶ 123; *id.* ¶ 42.)

The Allmans' First Amendment retaliation claim against Burdett is also futile as alleged. The Allmans state that they complained about the children's foster care conditions to Burdett, who subsequently "moved the children 2 hours away from Plaintiffs, knowing that Plaintiffs have no vehicle."  (Proposed Second Am. Compl. at 9.)  But the Allmans make no allegation as to when they raised their concerns regarding the foster care conditions to Burdett, nor do they allege the children were moved in retaliation for their complaints to Burdett.  *Id.*  That is, the Allmans failed to allege *any* facts detailing how Burdett was "motivated by a desire to retaliate against [them] because of [their] speech," *Shapiro*, 203 F. Supp. 3d at 596, or that Burdett had an "improper motive" in doing so, *Swagler*, 837 F. Supp. 2d at 529.  The Allmans cannot state a First Amendment retaliation claim without such allegations.

For these reasons, the court will deny leave to amend the Allmans' First Amendment retaliation claim against Glick, Cromer, Loyd, and the State Defendants with prejudice.  However, the Allmans' motion to amend their First Amendment retaliation claim against Burdett will be denied without prejudice.  This means that the Allmans may seek leave

---

[6] The Allmans also claim that Cromer "[m]a[de] false representations about evidence" during their JDR court hearing in retaliation for their protected speech.  (Proposed Second Am. Compl. ¶ 123.)  But any damages for this allegation would be barred by absolute immunity for prosecutorial functions, as discussed above.  Moreover, the Allmans offer no allegations as to how Cromer's action was "motivated by a desire to retaliate against [them] because of [their] speech." *Shapiro*, 203 F. Supp. 3d at 596.

to file a proposed second amended complaint limited solely to their First Amendment retaliation claim against Burdett. This proposed second amended complaint should clearly identify Grace Burdett's employer (so that the court can determine whether she is a state actor), as well as include specific allegations, including the alleged timeline, of Burdett's First Amendment retaliation. The court may still deny leave to file this proposed second amended complaint as futile if it does not address the deficiencies outlined in this memorandum opinion.

### C. Motion to Disqualify

Finally, the Allmans have filed a "Motion to Disqualify Attorney James Glick." (Dkt. 14.) The Allmans seek to disqualify Glick "from serving as legal representative" for SVDSS, "Foster Care, and/or Judge Linda Jones in any pending or future proceedings involving the Plaintiffs." (*Id.*)

There are many problems with this request. First, this federal court has no power to disqualify Glick from representing parties in future state court proceedings, as the Allmans seem to request. Moreover, federal courts only have "the power to control admission to its bar and to discipline attorneys *who appear before it.*" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (emphasis added). Glick has not appeared before this court in any capacity. Finally, the Allmans have not alleged any misconduct from Glick that would compel this court to take disciplinary action against him. The Allmans' motion to disqualify Glick will be denied.

### IV.    Conclusion

For the foregoing reasons, the court will grant Defendants' motions to dismiss the Allmans' amended complaint, (Dkts. 23, 28), and deny the Allmans' motion to disqualify

- 23 -

counsel, (Dkt. 14).  The court will deny the Allmans' motion for leave to file a second amended complaint, (Dkt. 13), with prejudice, except for the Allmans' proposed First Amendment retaliation claim against Burdett, which will be denied without prejudice.  If the Allmans wish to seek leave to file a second amended complaint against Burdett only, they must do so within **21 days** of the court's order by filing a motion for leave to file a second amended complaint and attaching a proposed complaint.  If the Allmans fail to seek leave to file this limited second amended complaint by this deadline, the court will direct the Clerk to close the case.

The Clerk is directed to mail a copy of this Memorandum Opinion to the Allmans and all counsel of record.

**ENTERED** this 30th  day of March, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE